Q54BBYHC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

IN RE:  BYHEART INC., INFANT
FORMULA MARKETING, SALES
PRACTICES and PRODUCTS
LIABILITY LITIGATION

                                        26 MD 3178 (AS)


                                        Conference
-------------------------------x
                                        New York, N.Y.
                                        May 4, 2026
                                        11:15 a.m.

Before:

                    HON. ARUN SUBRAMANIAN,

                                        District Judge

                         APPEARANCES

MARLER CLARK, L.L.P.
     Attorneys for Plaintiffs
BY:  WILLIAM D. MARLER

OFT LAW, PLLC
     Attorneys for Personal Injury Plaintiffs
BY:  BRENDAN J. FLAHERTY

LIEFF CABRASER HEINMANN & BERNSTEIN
     Attorneys for Plaintiff Luisa M. Pelaez
BY:  DANIEL E. SELTZ
     CELENA H. NELSON

REESE LLP
     Attorneys for Two Class Action Plaintiffs
BY:  MICHAEL R. REESE

Q54BBYHC

APPEARANCES (Continued)

BERGER MONTAGUE PC
        Attorneys for Sepulveda Plaintiffs
BY:   JACOB M. POLAKOFF


HOGAN LOVELLS
        Attorneys for Defendant Dairy Farmers of America
BY:   BENJAMIN A. FLEMING
        LAUREN S. COLTON (via Teams)


MUNGER, TOLLES & OLSON, LLP
      Attorneys for Defendant ByHeart, Inc.
BY: BETHANY W. KRISTOVICH


FAEGRE DRINKER BIDDLE & REATH LLP
      Attorneys for Defendant Target Corporation
BY: SARAH L. BREW (via Teams)
      ALYSSA L. REBENSDORF (via Teams)

Q54BBYHC

(Case called)

THE LAW CLERK:  Could we please have counsel state their appearances for the record starting with plaintiffs.

MR. MARLER:  Good morning, your Honor.

Bill Marler for the plaintiffs, about 25 of them.

MR. FLAHERTY:  Good afternoon, your Honor.

Brendan Flaherty, OFT Law for about 10 personal injury plaintiffs.

MR. SELTZ:  Good afternoon, your Honor.

Daniel Seltz with Lieff Cabraser Heinmann & Bernstein. I represent one of the personal plaintiffs

MR. REESE:  Good afternoon, your Honor.

Michael Reese from Reese LLP.  I represent two of the economic loss class action plaintiffs.

MR. POLAKOFF:  Good afternoon, your Honor.

Jacob Polakoff from Berger Montague for the Sepulveda class action plaintiffs.

MS. NELSON:  Celena Nelson with Lieff Cabraser for the plaintiffs.

THE COURT:  And for the defendants?

MR. FLEMING:  Good afternoon, your Honor.

Ben Fleming on behalf of DFA, and my colleague Ms. Colton is on the line.

MS. KRISTOVICH:  Bethany Kristovich with Munger, Tolles & Olson on behalf of ByHeart.

Q54BBYHC

THE COURT:  Good afternoon.  And next who do we have?

THE LAW CLERK:  We have counsel for Target on the Teams Meeting, if you could state your appearance for the record.

MS. BREW:  Good afternoon, your Honor.

This is Sarah Brew and my colleague Alyssa Rebensdorf appearing on behalf of Target Corporation.

THE LAW CLERK:  Counsel for Dairy Farm of America on the line?

THE COURT:  Why don't we do this:  Why don't we just get started.  This is the reason why we don't often do these hybrid hearings because if you could see the interface that we have, it's like from the 1980s which make it very difficult for people to call in and participate.  You can hear, but sometimes you can't actually speak.

So thank you everyone for coming here today.  I really don't have much of an agenda of what I'd like to discuss.  I'm happy to hear from the parties on what you would like to discuss.  I figure that given the number of parties in this case, a meet and greet was in order; and hopefully it provides you with the opportunity to speak with each other as you talk about mediation and the next steps in this litigation.  It's also the best day that we've had weather wise in New York in a long time so you can hopefully enjoy that as well.

Before we get started, I would like to discuss. I

Q54BBYHC

would note one issue of disclosure, which is the Court's law clerk has an application for employment outstanding at Munger Tolles for their DC office.  I don't think that it poses an issue because based on the parties' schedule, the first substantive thing that would be teed up for the Court would come probably six months from now I think based on the parties' schedule.  If anyone has an objection to the Court's law clerk participating in the case in the interim -- and he's going to be gone by the time these things are fully briefed.  But If someone has an objection, then we'll wall him off of the case and he won't have any participation in the matter, and that's fine as well.  Anyone can raise that objection, but I wanted to make the disclosure since that is something that is happening right now.

Otherwise, it looks like maybe we can get an update from counsel for ByHeart to give us an overview of what is happening in the case.  I know that there's mediation and discussions along those lines.  After this hearing, we'll have the plaintiffs will propose potentially a leadership structure for the personal injury and economic loss plaintiffs and perhaps a proposal in terms of a master complaint or bellwethers that they would want to propose should move forward.  And then I'm happy to address anything that anyone else wants to discuss.  So maybe counsel for ByHeart, you can go first.

Q54BBYHC

MS. KRISTOVICH:  Sure.  Thank you very much.  For not an agenda, there's a lot to cover there.  First with respect to the recruiting issue.  I actually did not know this.  I, of course, have no objection.  And as for the SDNY clerk, I represent to everybody I will recuse from any discussions because I don't want to make that an issue for anybody.  So I'll take that as an action item to make sure I or anyone else in the law firm is involved in that decision.

With respect to the schedule.  I think your Honor outlined it exactly that we're now committed to trying to mediate within the next 90 day period.  I'm happy to report that we have a date on calendar of 5/19 for the next session.  We've been working very hard.  The plaintiffs have been working very hard to get us information about the claims.  There are few pieces of information outstanding, but I'm hopeful they'll get this all to us pretty quickly such that we're able to make that session on the 19th productive.  My understanding is the same as yours that you're going to get a leadership proposal on around May 18.  And then there would be a 60 day period of time from when your Honor approves that leadership proposal, to file an amended or master complaint in the two sets of cases.  We're happy to meet and confer with the plaintiffs about what that looks like to make sure there are no disputes.

Two other related topics.  One, we picked up the samples from DFA in Nevada two Fridays ago.  We got the initial

Q54BBYHC

document production in a supplemental document production.  We understand from counsel for DFA that they're anticipating having that production complete within I think May 15 is the date they believe that it will be complete.  We may have a disagreement, your Honor, as to the scope of that production, whether everything has been produced.  We don't know yet because we don't have everything.  And so again, we'll do everything we can to resolve any issues before raising it with your Honor, but that is in progress.

And then the last issue that is new -- and I previewed this for everyone out in the hall because the meet and greet was helpful -- is that my client ByHeart has over a million pounds of formula that has been recalled and obviously cannot be sold that is sitting on its factory floors.  At some point we'll need to dispose of that because it needs to be disposed of in accordance with regulations.  I want to avoid any kind of spoliation issue, so we'll fully make a proposal to make it available to other parties, but then we might ask for an order for the Court sort of blessing anything before we engage in any disruption.

The final thing for your Honor -- and this is a very sort of minor thing is that there are a couple of dates that I think that now that everything has been brought into the MDL, I think lingering dates that need to be vacated.  I'm happy to relay those.  It's in the *Barbera* case and the *Llapashtica*

Q54BBYHC

case. I think there were status conference statements too. I think we have sort of passed that by and events have overtaken that, but I did want to flag those two dates.

THE COURT:  When you say vacate, these are scheduled dates for certain things to happen that make no sense now that the matters have been consolidated here.

MS. KRISTOVICH:  Exactly. To be more specific, the *Barbera* case and the *Llapashtica* case.  We were to file a status conference statement something like tomorrow or the next day.

THE COURT:  Those will be taken off the calendar, and we'll put in an order reflecting that.

MS. KRISTOVICH:  Thank you, your Honor.  That's all I have.

THE COURT:  Very Good. And am I correct because the Court did enter the parties' proposed schedule which has a pretty lengthy period of time for there to be responses to the complaint.  Was that length of time because you anticipate having discussions to facilitate the mediation essentially, that's why the schedule is so long?

MS. KRISTOVICH:  Correct.

THE COURT:  Very good.  I'm happy to hear from the plaintiff if they want to add anything to the summary that we receive from ByHeart or address any matters that you would like or I could give you good restaurant recommendations.

Q54BBYHC

MR. MARLER:  Well, it was my birthday yesterday, so I came in early so I've already with my wife done a few things and will probably do some more.

A couple things, your Honor.  This is Bill Marler for a number of the plaintiffs.  Couple things that I think we're till waiting on.  We have mediation scheduled the 19th.  I still think we're waiting for some insurance information and financial information from ByHeart and then other insurance information from DFA.  I think Ms. Kristovich outlined everything perfectly.  I think we'll work amongst ourselves in sort of leadership structure.  I think probably having a leadership structure for the class and then a separate leadership structure for the plaintiff injury people that we obviously could communicate and collaborate together on; but I think they're distinct enough that that might make some sense.

I think the only other maybe an issue that I was thinking about this morning is that given the nature of these cases, they're spread out over 15, 16, 17 states.  The defendants are spread out as well.  In California there are 12 plaintiffs.  And if those 12 plaintiffs add in all the parties that are likely to happen, Organic West is a California company and that will have an issue with diversity.  And then their also retail setting Target is in Minnesota, and there are three plaintiffs there.  That's out there that we're going to have to deal with.

Q54BBYHC

I think the bulk of the cases when we do an amended complaint or a consolidated complaint how we do that, everything should -- almost everything will be here, but there's going to be those potential outliers out there that probably during the course of the mediation and stuff we'll probably communicate amongst ourselves how we might deal with that.  Other than that, your Honor, I'll take some dinner reservation suggestions.  But other than that, I think we're kind of all moving in the relative same direction.  Go ahead.

MR. SELTZ:  I just wanted to add one thing about the potential consolidated complaint.  It's in with the letter.  We're still discussing whether it make sense on the PI side to have a consolidated complaint.  It may not because it's a small number of cases.  I just want to flag that as something that's still in discussion, and our goal of all this is to be efficient given the focus on resolution at this point.

THE COURT:  Okay.  Understood.

MR. REESE:  Good afternoon, your Honor.  Michael Reese.  I'm one of the counsel for the economic loss class plaintiffs.  I agree with everything my colleagues have said.  Plaintiffs Barr and also counsel for ByHeart.  I would just make a couple of point.

One is -- and I think to the extent leadership appointment is necessary, and I want to address that in a moment.  I think we're all in agreement that there would be

Q54BBYHC

separately leadership for the personal injury plaintiff cases versus the economic loss class cases. I spoke with Mr. Marler about that earlier today. I think we're in agreement on that. That just makes sense. I think that also makes sense as far as what they do, the personal injury plaintiffs do with the complaint may be very different from what we do. We anticipate filing a consolidated master complaint at some point which will be a proposed class action. They have of course individual claims, so it could look vastly different.

They may or may not file a master consolidated complaint, or they might file a short form complaint we were talking about at some point as well. It's in our submission to your Honor, but I will point out we do plan to add additional parties to our complaint. They're already on notice as far as settlement discussions that they would be involved, so it's not like we have to add them to a complaint to have them at the table with respect to our claims.

THE COURT: Who are those parties?

MR. REESE: We identify them as Dairy Farmers of America and Organic West and that's on page two of our submission which is on ECF 132.

THE COURT: Okay.

MR. REESE: Finally, I would just raise that since we have the next mediation scheduled for the 19th of May. And I think at least from the economics loss class action plaintiffs,

Q54BBYHC

and I believe also from the personal injury class action counsel, we've been all working very efficiently and cohesively together.  If it make sense to put a leadership application right before that mediation, or maybe postpone that for a few weeks so that the parties can focus on the mediation.  And then if leadership's decided -- if leadership's needed because of no resolution and there's really going to be heavy litigation, I'm just throwing that out.  Because I've had many cases involving recall cases where all the plaintiffs counsel worked well together, and then everybody if there's a settlement, it's just settlement class counsel.

THE COURT:  So right now I believe the plaintiffs' proposed structure is due the day before the mediation.

MR. REESE:  That's correct, your Honor.

THE COURT:  You said it should either be right before the mediation or after the mediation, which one do you propose?

MR. REESE:  I would suggest postponing for two weeks so that we could focus on the mediation.  We certainly can get it done.  If we're focusing our efforts on the mediation on the 19th, let's focus all of our efforts on that.

THE COURT:  Does anyone have an objection to that?

MR. MARLER:  No, your Honor.

MS. KRISTOVICH:  No, your Honor.

THE COURT:  We'll make that modification to the schedule.  I don't think that makes a difference given the

Q54BBYHC

other deadlines that are either farther out than that.  The only thing I'll say in terms of proposing a structure -- and when you say structure it seems onerous.  From my perspective, it probably make sense to have a lead counsel, like a person that the defendants and everyone else can have interactions with.  For reasons that you may tell me about, it may be necessary to have a couple more people, but I'm not anticipating that similar to a MDL with like hundreds of cases that you need to have an executive committee and liaison counsel and all this other stuff.  And so maybe you'll tell me that that's wrong and you need all that stuff, but I'm hoping that we can have something that's a little more efficient here.

MR. REESE:  Thank you, your Honor.  And I appreciate too in your individual practices you talk about having a lead trial counsel, which in some respects acts as a liaison counsel with your Honor; so that might be what we end up deciding to do.

THE COURT:  Very good.  Anything else from the plaintiffs or from the defendants?  I guess I'll ask ByHeart. The only thing that was raised by the plaintiff was the insurance information from both DFA and ByHeart, so maybe you have an update on that?

MS. KRISTOVICH:  Again, I think we're good on the insurance information.  I've been speaking with the mediator about the financial information, so I don't want to get into

Q54BBYHC

anything mediation privilege. I think we are waiting for additional insurance information from DFA. That's part of the exchange we're still pushing on -- again we have a dispute on in the coming weeks, but I'm hoping we won't.

THE COURT: Okay.

MR. FLEMING: Yes, your Honor. We have produced primary policies for the past three years. I think we haven't heard anything from the plaintiffs about needing anything more. We got some questions from ByHeart on Friday night that we're looking into right now and we're planning our responses.

THE COURT: All right. Anything else that we need to take care of today for the good of the order from the plaintiff?

MR. MARLER: No, your Honor.

MS. KRISTOVICH: Nothing, your Honor.

THE COURT: Again, thank you very much for coming in. Really appreciate it. We'll get in the modification to the schedule, and we will vacate the two deadlines that we were told about. Otherwise, I suppose I should say there was a proposal that we have conferences on every other month. Do the parties have a suggestion as to when we should meet next? And I think that conference, unless the parties feel differently could be a remote conference because people don't have to necessarily come to New York or come to the courthouse. If the parties are agnostic, I'll just set a date a month after next,

Q54BBYHC

and we'll put it on the calendar.  And if there's problem with that, you can just let the Court know.  Does that make sense?

MS. KRISTOVICH:  Your Honor, the week of July 4th I'm actually out that week.  That's probably a tricky week for a lot of people.  So in other words, not exactly.

THE COURT:  So mid-July.  We'll do it mid-July and find a date that works.  Very good.  Thank you very much.

(Adjourned)